**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN MICHAEL WARD,
    *Plaintiff*,

    v.

TOWN OF NORTH STONINGTON, ET
AL.,
    *Defendants.*

No. 3:20-cv-00124 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Shawn Michael Ward ("Mr. Ward" or "Plaintiff") has sued the Town of North

Stonington, Zoning Enforcement Officer Juliet Hodge, in her individual capacity, the North

Stonington Planning & Zoning Commission, the North Stonington Zoning Board of Appeals,

and Zoning Board of Appeals members James E. Lord, Charlie Berger, Shawn P. Murphy,

Candy L. Palmer, and Mark Leonard, in their individual capacities, (collectively, "Town of

North Stonington " or "Defendants") for violations of the Equal Protection and Due Process

Clauses of the United States Constitution under 42 U.S.C. § 1983 and Connecticut common

law violations of abuse of process, negligent infliction of emotional distress, and negligence.

Def.s' Notice of Removal, ECF No. 1 (Jan. 28, 2020) ("Notice of Removal").

Defendants have moved for summary judgment on all the aforementioned claims. Defs.'

Mot. for Summ. J., ECF No. 53 (Mar. 15, 2022) ("Mot. for Summ. J."). For the foregoing reasons,

Defendants' motion for summary judgment is **GRANTED in part**, and **DENIED in part.**

1

Defendants' motion for summary judgment is **GRANTED** with respect to the substantive due process, procedural due process, and equal protections claims under the Fourteenth Amendment. These federal claims are now **DISMISSED**.

Defendants' motion for summary judgment is **DENIED** with respect to the remaining state law claims, over which the Court declines to exercise supplemental jurisdiction and will remand back to the Connecticut Superior Court for the Judicial District of New London.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

On February 15, 1996, Mr. Ward, bought the 114 acre property at 79 Pine Woods Road, North Stonington, CT 06359 ("Property"). Def.'s Town of  North Stonington Statement of Material Facts, ECF No. 53-2 ¶ 1 (Mar. 15, 2022) ("Town of North Stonington SMF").

The Property encompasses approximately 114 acres of land with buildings and improvements thereupon and has been located within the R-80 Rural Preservation Zoning District and is shown on the North Stonington Assessor's Map 90, Lot 1981.  Notice of Removal at 10.

Subsequent to Mr. Ward's purchase of the Property, Zoning Official George Brown advised the Plaintiff that the historic use of the Property had always been agriculture and that a tree farm with accessory landscaping activities would be considered an agriculture permitted in the R-80 Rural Preservation Zoning District as of right and that no change of use permit would be required. *Id.*

The zoning regulations that were in place at that time for the Town, Zoning Regulation Section 202, provided that a zoning permit was only required for a change of use, and not the continuation of an existing use. *Id.*

The 1999 Zoning Regulations also provided that agriculture, agricultural facilities, and accessory structures and uses were all permitted as of right in the R-80 zoning district, at Section 403.3. *Id.*

The Defendant, the Town of North Stonington, is a municipality formed under the laws of the State of  Connecticut and adopted zoning regulations effective May 21, 1964. *Id.* at 10-11.

The Defendant, Michael Urgo, is the First Selectman for the Town of North Stonington and is the chief administrative official for the Town. *Id.* at 11.

The Defendant, the North Stonington Planning & Zoning Commission is the governmental commission charged with enforcement of the Town's zoning regulations. Juliet Hodge (nee Leeming) is the current Zoning Official of the Town of North Stonington and is charged with the enforcement of the Zoning Regulations. *Id.*

The Defendant, the Zoning Board of Appeals for the Town of North Stonington (the "ZBA") is the municipal agency empowered by the Section 8- of the Connecticut General Statutes and Chapter 14 of the North Stonington Zoning Regulations (the "Zoning Regulations 11") to decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of the Zoning Regulations. *Id.*

The Defendants, Zoning Board of Appeals members James E. Lord, Charlie Berger, Shawn P. Murphy, Candy L. Palmer, and Mark Leonard, were the members of the Zoning Board of Appeals during the time period relevant to this Complaint, and are sued in their individual capacities. *Id.*

Around February 2000, Mr. Ward incorporated Fields of Dreams Tree Farm and Landscaping, Inc. ("Field of Dreams" or the "Company") and established a tree farm with

accessory landscaping activities located in the western farm field on the Property.  Town of North Stonington SMF ¶ 2.

Fields of Dreams owns the tree farm at 79 Pine Woods Road, performs landscape construction on residential properties, including softscape services, such as planting large trees, grading, supplying materials, and site work. *Id* ¶ 3.

The Zoning Regulations in effect as of February of 2000 allowed agricultural uses, including the growing of trees and other horticultural products, as well as accessory uses customarily incidental and subordinate to those agricultural uses, as uses permitted as of right within the R-80 Rural Preservation Zoning District. Notice of Removal at 12.

The Company operated, and continues to operate without interruption, principally as a tree farm and nursery, growing trees, shrubs and plantings onsite and then installing and maintaining them offsite for commercial, industrial, residential, and institutional customers. *Id.*

The landscaping business takes place off site, Plaintiff's employees go to the clients, and no direct retail activity takes place on site. *Id.*at 13.

The Town has been aware that the business has operated from that location for 13 years. *Id.*

In addition to onsite tree farm and nursery operations, the Company is regularly called upon to complete associated offsite work related to planting, pruning, wielding, fertilizing, gardening, irrigating, lawn care and cutting, and the construction of in minor retaining walls, patios and earth moving for the purpose of enhancing, protecting, and improving soil, plants, lawns and gardens. *Id.*

Around May 2000, Zoning Official Marc Benjamin inspected the Property and reported that the Plaintiffs use of the Property constituted a legitimate agricultural use, and took no further enforcement action against Mr. Ward. Town of North Stonington SMF ¶ 6.

Around October 30, 2003, the Town of North Stonington received a complaint filed against the Plaintiff alleging that he was operating an illegal landscape business from the Property. Notice of Removal at  13.

On November 4, 2003, then ZEO Craig Grimord performed an initial inspection of Ward's property from the road, in response to a complaint filed against Ward. Town of North Stonington SMF ¶ 7.

On November 18, 2003, Mr. Grimord performed a drive-by inspection of Mr. Ward's property, and did not find any evidence of violations. Town of North Stonington SMF ¶ 8.

On November 19, 2003, Mr. Grimard wrote a letter to the complainant indicating that the Property was being used as a tree farm, activities associated with this use were permitted as of right, and there were no zoning violations on the Property. Notice of Removal at 14.

In 2009, Hodge performed a partial site-walk of Ward's property, consisting of the house, horse barn area, and carriage barn area. Hodge issued a report that the landscaping business takes place off site, the employees go to the clients, no direct retail activity takes place on site, and the primary use of Ward's property appeared to be agricultural.  Town of North Stonington SMF ¶ 11.

Around November 22, 2009, Zoning Official Juliet Leeming inspected the Property and reported that the principal use of the property was agriculture. Notice of Removal at 14.

 Ms. Leeming acknowledged the inspections and findings of her predecessors, Mr. Benjamin and Mr. Grimard, in reference to the Property and its use at that time. *Id.*

Ms. Leeming also reported evidence of the accessory landscaping activities on the Property but took no zoning enforcement action against the Plaintiff at that time. *Id.*

Upon information and belief, no subsequent physical inspection of the Property has been conducted by any Zoning Official since Ms. Leeming's inspection since 2009. *Id.*

On November 17, 2017, Zoning Official Juliet Hodge issued a Notice of Violation (the "Notice of Violation 11") to Mr. Ward alleging the operation of an unpermitted commercial landscape construction business on the Property in violation of Chapter 5 of the Zoning Regulations and ordering the Plaintiff to cease said operations. *Id.*

The Notice of Violation referenced a variety of activities taking place on the Property including the stockpiling and processing of stones, the illegal construction building, the parking and storage of landscaping vehicles and equipment, the parking of employee vehicles, the clustering of employees, and high volumes of truck traffic. *Id.* at 14-15.

### B. Procedural History

On January 28, 2020, Defendants filed a Notice of Removal including Mr. Ward's Complaint. Notice of Removal.

On March 05, 2020, Defendants filed an answer to Mr. Ward's Complaint. Def.'s' Answer, ECF No. 15 (Mar.05, 2020) ("Answer").

On March 7, 2022, Mr. Ward moved to join Fields of Dreams Tree Farm and Landscaping Inc. as a party-plaintiff under Fed. R. Civ. P. 15 and 20. Mot. to Join Party-Pl, ECF No. 48. (Mar. 07, 2022) ("Mot. for Joinder").

On that same day, Defendants filed an objection to Mr. Ward's motion for joinder. Defs.' Obj. to Pl.'s Mot. for Joinder, ECF No. 49 (Mar. 07, 2022) ("Def.'s Obj.").

On March, 11, 2022, Mr. Ward moved to amend the complaint. Pl.'s Mot. to Amend/Correct, ECF No. 50 (Mar. 11, 2022) ("Mot. to Amend").

On that same day, Mr. Ward filed a reply to Defendants' objection to the motion for joinder. Pl.'s Reply to Defs.' Obj., ECF No. 51 (Mar. 11, 2022) ("Pl. Reply").

On that same day, Defendants filed an objection to Mr. Ward's motion to amend the complaint. Def.s' Obj to Pl. Mot. to Amend/Correct, ECF No. 52 (Mar. 11, 2022) (Def.s' Obj. Mot. to Amend").

On March 15, 2022, Defendants moved for summary judgment. Mot. for Summ. J.

On August 30, 2022, Mr. Ward filed his opposition to Defendants' motion for summary judgment. Pl.'s Response to Def.s' Mot. for Summ. J., ECF No. 60 (Aug. 30, 2022) ("Ward Mem..").

On September 13, 2022, Defendants filed their reply to Mr. Ward's response to Defendants' motion for summary judgment. Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 64 (Sept. 13, 2022) ("Defs.' Reply").

On October 17, 2022, Mr. Ward moved for permission to file a sur-reply to Defs.' reply to Mr. Ward's opposition Defendants' motion for summary judgment and filed the proposed sur-reply as an exhibit. Pl.'s Sur-Reply to Defs.' Reply to Pl.'s Response to Defs.' Mot. for Summ. J., ECF No. 65 (Oct. 17, 2022) ("Pl. Sur-Reply"); Exhibit A, Pl.'s Sur-Reply, ECF No. 65 (Oct. 17, 2022).

On March 14, 2023, the Court held a hearing on the motion for summary judgement. Min. Entry, ECF No. 69 (Mar. 14, 2023).

## II.      STANDARD OF REVIEW

### A.  Motion for Summary Judgment

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id*. "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (internal citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    DISCUSSION

Mr. Ward asserts five claims against the Defendants: (1) violation of Due Process Clause (Count 1), Compl. ¶¶ 1-51; (2) violation of Equal Protection Clause (Count 2), *id.* ¶¶ 1-52; (3) intentional infliction of emotional distress, *id.* ¶¶ 1-55; (4) abuse of process, *id.* ¶¶ 1-57; (5) negligent infliction of emotional distress, *id.* ¶¶ 1-62;  and (6) negligence, *id.* ¶¶ 1-63.

9

Defendants move for summary judgment arguing that there is no genuine dispute of material facts and that they are entitled to summary judgment as it pertains to Mr. Ward's substantive due process claim, procedural due process claim, equal protection claim ("federal claims"), intentional infliction of emotional distress claim, negligent infliction of emotional distress claim, takings claim, and negligence claim ("state law claims").

The Court will address the federal claims first, and if these federal claims do not survive, whether supplemental jurisdiction should be exercised over the remaining state law claims.

### A. The Due Process Claims

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause of the Fourteenth Amendment requires states to operate in accordance with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) (internal citations and quotation marks omitted). There are two types of due process claims: substantive due process claims and procedural due process claims.

Each claim will be analyzed in turn.

### 1. The Substantive Due Process Claim

Substantive due process requires plaintiffs to show deprivation of a constitutional right under circumstances that were "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (quoting *Rochin v. California*, 342 U.S. 162, 172 (1962)); *see also Demas v. Town of Trumbull*, No. CIV.A. 303CV2273JCH, 2005 WL 756506, at *5 (D. Conn. Mar. 31, 2005) ("Only the most egregious official conduct in which government officials abuse their power and

employ[ ] it as an instrument of oppression can be said to be arbitrary in the constitutional sense[.]") (citations and internal quotation marks omitted); *Servidio Landscaping, LLC v. City of Stamford*, No. 3:19-CV-01473 (KAD), 2020 WL 7246441, at *6 (D. Conn. Dec. 9, 2020) ("[T]he dispute between these parties is a straight-forward, garden variety, zoning dispute between a landowner and a municipality. The issues raised can be, have been and should be brought to the state court for adjudication."); *Integrity Soc. Work Servs., LCSW, LLC v. Becerr*a, No. 21-2757-CV, 2022 WL 1930866, at *2 (2d Cir. June 6, 2022) (" Integrity has not identified any conduct that is  outrageous." ) (internal quotation marks omitted);*Clubside,* 468 F.3d at 158 (2d Cir. 2006) ("[I]t is not the role of the federal courts to protect landowners from merely arbitrary actions that are correctable by state remedies[.]"); *Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C. Cir. 1988) ("Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983.").

Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with "no legitimate reason for its decision." *Komondy v. Gioco*, 253 F. Supp. 3d 430, 453 (D. Conn. 2017) (citations and internal quotation marks omitted).

Defendants argue that Mr. Ward "never had a constitutionally protected property interest in a hardscape commercial landscaping business in a R-80 residentially zoned area." Mot. for Summ. J. at 4. Even if he had, "after Ward was issued the Notice of Violation, he voluntarily relocated his equipment to a commercial property prior to his hearing before the Zoning Board of Appeals regarding the appeal of his Notice of Violation." *Id.* at 5. As a result, in Defendants'

view, "[w]here a cease-and-desist order issued but not enforced, the party to whom the cease-and-desist is issued to is not deprived of a protectable property interest." *Id.* (citing cases).

Moreover, Defendants argue that even if Mr. Ward had a constitutionally protected property interest, any alleged deprivation of that interest was not "for arbitrary, capricious, and/or irrational reasons." *Id.* In their view, the issuance of the Notice of Violation resulted from a Mr. Ward's decision to change how the property was used from earlier inspections by the Defendants, and thus cannot be considered to be an arbitrary, capricious or irrational decision. *See id.* at 7 ("When ZEO Hodge issued a Notice of Violation to Ward on November 17, 2017, Ward was engaged in a much different business than when his property was inspected."); *id.* ("Ward had made a substantial, intensified use of his property for purposes of a commercial hardscape construction business, which is not allowed under the zoning regulations on a R-80 zoned property, and it is also not an accessory to an agricultural use under the zoning regulations, and therefore makes the issuance of the Notice of Violation neither irrational nor arbitrary.").

In response, Mr. Ward simply argues that **"**[t]he Defendants are collaterally estopped from contesting this issue" and that "[t]he Superior Court expressly found that Ward's landscaping operation was permitted as of right in the R-80 zoning district preexisting non-conforming uses." Ward Mem. at 7.

In reply to that argument, Defendants argue that "because mutuality of parties does not exist, collateral estoppel does not apply in the present case. Plaintiff must still prove that he had a constitutionally protected property interest, which was taken from him in a manner that was arbitrary, capricious, and irrational, which he cannot do . . . ." Def. Reply at 3.

The Court agrees.

Mr. Ward's substantive due process claim "is not established simply by proving that [he] did not obtain what he or she [was] entitled to under state law." *Natale,* 170 F.3d at 262. "For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" *Id.* And "arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive components of the Due Process Clause." *Id.* As a result, substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action." *Id.* at 263.

Here, Mr. Ward could and did achieve relief in a state court action for the Defendants' conduct. Memo in Opp. at 14 ("The court finds that the landscaping services in dispute are protected by General Statutes Section 8-2 as pre-existing non-conforming uses, Section 8-2 prohibits the retroactive application of zoning regulations . . . ."). In other words, a Connecticut court ruling already addressed Mr. Ward's concerns about arbitrary and capricious conduct on the part of the Defendants. And other than to rely on that ruling and its underlying factual findings, and regardless any other allegedly disputed fact relied on by Mr. Ward, he offers no basis for relief under the U.S. constitution substantive due process protections. In the absence of any applicable precedent providing for a federal substantive due process claim under such circumstances – Mr. Ward's cite to none – this claim cannot survive summary judgment.

Accordingly, Mr. Ward's substantive due process claim will be dismissed.

## 2.  The Procedural Due Process Claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 42 U.S. 319, 332 (1976). "A procedural due process analysis proceeds with two  (asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir.2004) (citations omitted).

As to the first question, "[p]roperty interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Youngs v. Fusaro*, 179 F.Supp.3d 198, 206 (D. Conn. 2016) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "A person must be entitled to a benefit before it becomes property interest." *Id.* (citation omitted). Thus, "[t]he inquiry into whether there is a constitutionally cognizable property interest involves two questions: (i) whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff, and (ii) [o]nce such a property right is found, [the question becomes] whether that property right constitutes a property interest for purposes of the Fourteenth Amendment." *Id.* (citations and internal quotation marks omitted).

In order to have a property interest, there must be "more than a unilateral expectation of it." *Id.* (citation and internal quotation marks omitted). There must be "a legitimate claim of entitlement to it." *Id.* (citation and internal quotation marks omitted). "[I]f state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the

level of a property right entitled to due process protection. *Id.* (quoting *RR Village Ass'n Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987) (collecting cases).

If the answer to the first question is in the negative – that is, there is no liberty interest interfered with by the State – then this Court need not answer the second question: "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Shakur*, 391 F.3d at 118.

Defendants argue that Mr. Ward "may have had a protected property interest in an agricultural use with the accessory landscaping use for his property at 79 Pine Woods Road as a tree farm."  Memo in Support of Mot. for Summ. J. at 11. But he "never had a constitutionally protected property interest in a landscape commercial landscaping business in a R-80 residentially zoned area." *Id.* at 11-12. Moreover, "after Ward was issued the Notice of Violation, he voluntarily relocated his equipment to a commercial property prior to his hearing before the Zoning Board of Appeals regarding the appeal of his Notice of Violation." *Id.* at 12.

Nevertheless, even if Mr. Ward "had a valid property in operating a commercial landscape construction business with hardscape services and palletized stone from a residentially zoned property, Ward was afforded a public hearing, and therefore was not deprived of procedural due process." *Id.* at 13; *see id.* at 13-14 ("Ward filed a timely appeal of his November 17, 2017 Notice of Violation, and had a public hearing on March 20, 2018, in front of the Zoning Board of Appeals.") (citation omitted).

In response, Mr. Ward relies once again on his collateral estoppel argument.

The Court disagrees.

 The threshold issue for this procedural due process claim is whether Mr. Ward "purposefully avails [himself] of the privilege of conducting activities within the forum State."

*Vanco Trading, Inc. v. Odfjell Terminals (Houston) LP*, No. 3:09CV219 AWT, 2010 WL 965789, at *4 (D. Conn. Mar. 15, 2010).But Mr. Ward concedes, as he must, that he did avail himself of such procedures. Indeed, he received, in his view, a favorable ruling from a Connecticut Superior Court. Memo in Opp. at 14 ("The court finds that the landscaping services in dispute are protected by General Statutes Section 8-2 as pre-existing non-conforming uses, Section 8-2 prohibits the retroactive application of zoning regulations . . . ."). As a result, having availed himself of available state court procedures, and obtained favorable relief, Mr. Ward cannot now claim that he was denied procedural due process under the U.S. constitution.

Accordingly, Mr. Ward's procedural due process claim will be dismissed.

### B.  The Equal Protection Claim

A claim under the Constitution's Equal Protection Clause may lie if the plaintiff "(1) . . . compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [the plaintiff]." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995).

Plaintiff may also allege a "class of one" claim, where the plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside*, 468 F.3d at 159.

16

A plaintiff alleging a "class of one" claim "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Id.* The existence of highly similar circumstances can then provide an inference that the difference in treatment "lack[s] any reasonable nexus with a legitimate governmental policy." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (internal citation omitted). "A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation, however, where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." *Id. (*internal citation omitted).

Defendants argue that "[Mr.] Ward's claim of an Equal Protection violation fails under both the "similarly situated" theory, and the "class-of-one" theory." Mot. for Summ. J. at 17. Moreover, Defendants argue that "Ward identifies no one in the complaint who was similarly situated to him but was treated differently." *Id*

Mr. Ward alleges that there are at least four landscaping businesses similar to his that allegedly have not been subjected to similar zoning enforcement. *See* Pl. Ex. 1, Shawn Michael Ward Exhibit, ¶ 35, ECF No. 60-2 (Jun. 30, 2022) ("There are at least four landscaping businesses similar to mine operating within the Town which have not been subject to enforcement actions, despite having high volumes of truck traffic, employee vehicles, and which operated in residential zoning areas: Robert Melinowsky, owner of 4D Residential Design Services, Russ Tuthill, owner of Sunset Design & Gardens, Stanley Stone & Hardscape, and Alcides Silva, with Big Al & Sons.").

He argues that "[t]he Defendants' sole argument for granting summary judgment on the equal protection claim, either under a "class of one" or "selective enforcement theory," is to identify two landscaping businesses that the Town subjected to enforcement actions." Ward

Mem. At 25. Mr. Ward also argues that "the Defendants' assertion does not establish this material fact as a matter of law. The existence of similarly situated persons is a question of fact." *Id.* (citations omitted).

Defendants note that "[Mr.] Ward alleged these businesses were similarly situated because those businesses also had high volumes of truck traffic, employee vehicles and operated in residentially zoned areas." Def. Reply at 5. In addition, Defendants argue that "[Mr.] Ward's argument of similarly situated businesses fails because he has not demonstrated these businesses to be similarly situated in all material respects." *Id.*

The Court agrees.

 As at least one court in this District have recognized, *see Musco Propane, LLP v. Town of* Wolcott, 891 F.Supp.2d 261 (D. Conn. 2012), consistent with guidance from the First Circuit "[t]he similarly situated requirement must be enforced with particular rigor in the land-use context because zoning decisions will often, perhaps almost always, treat one landowner differently from another." *Cordi-Allen v.* Conlon, 494 F.3d 245 (251 (1ˢᵗ Cir. 2007). Although this holding is not binding on this Court, as my colleague, the Honorable Janet Hall, noted in her opinion in *Musco Propane, LLP*: "The Second Circuit cited this passage from *Cordi-Allen* with approval in *Mattison v. Black Point Beach Club* Association, 376 Fed. Appx. 92, 94 (2010)."891 F.Supp. 2d at 272.

While Mr. Ward claims that these businesses were similarly situated because those businesses also had high volumes of truck traffic, employee vehicles and operated in residentially zoned areas, *id.*, this view, without much more, does not make these businesses similarly situated in all material respects. *See Clubside, Inc.*, 468 F.3d at 159 ("[N]o rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a

degree that would justify the differential treatment on the basis of a legitimate government policy."); *see also Progressive Credit Union*, 889 F.3d at 49 ("A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation, however, where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated."); *cf. Muscxo Propoane LLP,* 891 F. Supp. 2d at 272 ("[N]o evidence to suggest that, had Cumberland Farms' or Maxum's applications would have been granted had they applied to install nonconforming tanks in 2009 or 2010)(citations omitted); *id.* ("[T]here is no evidence that Cumberland Farms' and Maxum's nonconforming tanks ever met with the sort of community opposition that Musco's application engendered.") (citations omitted).

As a result, no reasonable juror could find Mr. Wards similarly situated to his alleged comparators.

Accordingly, Mr. Ward's "class of one" equal protection claim fails and will be dismissed.

To the extent that Mr. Ward is alleging a selective enforcement claim under the Equal Protection Clause, this claim fails as well.

To establish a selective enforcement claim, a plaintiff must prove that, "(1) in comparison with others similarly situated, [it] was selectively treated, and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Musco Propane, LLP*, 891 F. Supp. 2d at 274 (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and other citation omitted).

But even if Mr. Ward "could establish that the other businesses it names were similarly situated for selective enforcement purposes, [he] has not proffered evidence sufficient to support

19

a finding that [his] selective treatment 'was based on impermissible considerations.'" *Id.*
(quoting, *Diesel*, 232 F.3d at 103). Indeed, hostility towards Mr. Ward's business activities
would be insufficient to support a selective enforcement claim. *See id.* ("At best, the record
suggests that the defendants were hostile towards Musco's business activities, but such use-
directed hostility cannot support an equal protection claim.") (citing *Harlen Assocs. V. Vill. Of
Mineola*, 273 F.3d 494, 503 (2d Cir. 2001) ("Enmity directed toward a business property use
may not form the basis for a constitutional claim because equal protection rights vest in
individuals rather than business activities.")).

As a result, no reasonable juror could find that that Mr. Ward had a viable equal
protection claim.

Accordingly, any equal protection claim based on a selective enforcement theory also
would fail, and will be dismissed as a matter of law.

### C.  Supplemental Jurisdiction

Having determined that all federal claims over which the Court had original jurisdiction
should be dismissed, the Court may decline to exercise supplemental jurisdiction over Plaintiff's
remaining claims under Connecticut law. 28 U.S.C. § 1367(c)(3); *Kolari v. N.Y.-Presbyterian
Hosp.*, 455 F.3d 118, 122 (2d Cir. 206) ("[A] district court 'may decline to exercise supplemental
jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28
U.S.C. § 1367(c)(3)).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the
traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether
to exercise jurisdiction." *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484
U.S. 343, 350 (1988) and citing *Itar-Tass News Agency v. Russian Kurier, Inc.*, 140 F.3d 442,

446-47 (2d Cir. 1998)). "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id*. (quoting *Cohill*, 484 U.S. at 350 n. 7).

Here, having dismissed all of Mr. Ward's federal law claims, his state law claims, which originally were brought in state court, should be remanded to state court, and adjudicated there.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED in part**, and **DENIED in part.**

Defendants' motion for summary judgment is **GRANTED** with respect to the substantive due process, procedural due process, and equal protections claims under the Fourteenth Amendment. These federal claims are now **DISMISSED**.

Defendants' motion for summary judgment is **DENIED** with respect to the remaining state law claims, over which the Court declines to exercise supplemental jurisdiction and will remand back to the Connecticut Superior Court for the Judicial District of New London.

The Clerk of the Court is respectfully directed to close this case here, and remand it to the Connecticut Superior Court for the Judicial District of New London.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of March, 2023.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge